JOURNAL AND ENTRY OPINION
{¶ 1} Plaintiff-appellants, William and Maryann Grattino (individually referred to by name or collectively referred to as "appellants"), appeal the decision of the Cuyahoga County Court of Common Pleas granting defendant-appellee, Westfield Insurance Company's ("Westfield"), motion for summary judgment. For the reasons stated below, we affirm.
 I. {¶ 2} On November 19, 1999, William Grattino, a pedestrian, was struck by a motor vehicle operated by Christopher Marshall. At the time of the accident, Marshall was an uninsured driver. When he was struck, Grattino was participating in an informational picket line at the Home Depot in Strongsville, Ohio.[1] Grattino became aware of this picket line through his former union, the International Union of Operating Engineers, Local Number 18 ("Union").[2]
 {¶ 3} Following the accident, appellants pursued a claim against their uninsured motorist insurance carrier, Allstate Insurance Company ("Allstate"), and the Union's insurance company, Westfield. Appellants brought their claims against Westfield, pursuant to the Ohio Supreme Court's decisions in Scott-Pontzer v. Liberty Mutual, Fire Ins. Co.
(1999), 85 Ohio St.3d 600, and Ezawa v. Yasuda Fire Marine Ins.Co. of America (1999), 86 Ohio St.3d 557. Appellants' claims for coverage were denied.
 {¶ 4} On June 4, 2001, appellants filed suit in the Cuyahoga County Court of Common Pleas seeking damages arising from the accident. On November 22, 2002, the trial court granted Westfield's motion for summary judgment.[3] On January 15, 2003, the court ruled that, pursuant to Civ.R. 54(B), there was "no just reason for delay." On February 18, 2003, appellants received the policy limits from Allstate. Appellants filed a timely appeal and advance one assignment of error for review.
 II. {¶ 5} In their sole assignment of error, appellants argue that:
"The Trial Court Erred In Granting The Summary Judgment Motion Of Defendant-appellee, Westfield Insurance Company, Because William Grattino Should Have Been Afforded Underinsured Motorists Coverage Under His Union's Insurance Policy."
 {¶ 6} For the reasons stated below, we affirm the decision of the trial court.
 {¶ 7} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317.
 {¶ 8} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330. The record on summary judgment must be viewed in the light most favorable to the opposing party. Williams v. First United Church ofChrist (1974), 37 Ohio St.2d 150.
 {¶ 9} In moving for summary judgment, the "moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280. Thereafter, the nonmoving party must set forth specific facts by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id. A motion for summary judgment forces the plaintiff to produce probative evidence on all essential elements of his case for which he has the burden of production at trial. Celotex, supra. Plaintiff's evidence must be such that a reasonable jury might return a verdict in his favor.Seredick v. Karnok (1994), 99 Ohio App.3d 502.
 {¶ 10} This court reviews the lower court's granting of summary judgment de novo. Ekstrom v. Cuyahoga County Community College, (November 14, 2002), Cuyahoga App. No. 81501, 2002-Ohio-6228.
 III. {¶ 11} In Scott-Pontzer, supra, the Ohio Supreme Court found that a commercial automobile insurance policy issued to Superior Dairy, Inc. extended to the surviving spouse of an employee killed in an automobile accident caused by the negligence of another motorist. The insurance policy issued by Liberty referred to Superior Dairy, Inc. as the insured. However, the underinsured motorists section of the policy defined "insured" as:
"(B) Who Is An Insured
1. You.
2. If you are an individual, any family member.
3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss, or destruction.
4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." Scott-Pontzer, supra.
 {¶ 12} The court concluded that the "you" contained in the policy was ambiguous. "It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including to the corporation's employees." Pontzer, supra at 664. Employing the legal principle that ambiguous insurance provisions will be construed in favor of the insured and against the insurer, the court found decedent to be an insured under the commercial policy. Id.; Faruque v. Provident Life Acc. Ins. Co. (1987), 31 Ohio St.3d 34.
 {¶ 13} In Ezawa, supra, the Ohio Supreme Court extended theScott-Pontzer rationale to include residential family members of employees of a corporate named insured.
 IV. {¶ 14} In the case at bar, the declarations page of the Westfield insurance policy ("policy") lists the named insured as the Union. The policy's commercial general liability and business auto coverage forms indicate that "throughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations." Further, the policy's Ohio uninsured motorists coverage endorsement language mirrors the language contained in Scott-Pontzer, supra. For these reasons, appellants argue that Grattino is an insured under the policy.
 {¶ 15} In support of their position, appellants cite Bernabei v.St. Paul Fire Marine Ins. Co., et al. (Feb. 6, 2002), Stark County Case No. 2000CV0299.[4] In this trial court decision, the decedent was operating a motorcycle when he was struck by an underinsured motorist. The decedent's wife, as executrix for the estate, attempted to establish insurance coverage under the deceased's union's insurance policy.
 {¶ 16} The court, applying the Scott-Pontzer rationale, granted Bernabei's motion for summary judgment, finding no rational basis for distinguishing between employees of an incorporated association and the members of an unincorporated association. The court found the "you" contained in the insurance policy issued to the union was similarly ambiguous. Bernabei was found to be an insured under the policy and, pursuant to Ezawa, supra, his estate could collect the proceeds.
 {¶ 17} In the case sub judice, Grattino is a retired life member of the Union. Appellants argue that, at the time of the accident, the Union was acting through Grattino in the same manner that a corporation acts through an employee. Appellants ask this court to adopt the reasoning of Bernabei and find that Grattino is an insured under the Union's policy of insurance. We respectfully decline.
 {¶ 18} The court in Scott-Pontzer, supra, held that the ambiguous "you" must apply to a person or persons and while "you" referred to Superior Dairy, Inc., it also referred to Superior's employees. This court has held that, for legal purposes, a union is to be treated as a corporation in relation to its members. Miazga v. Int'l Union of Op.Engineers (1964), 2 Ohio App.2d 153.[5] We find, however, that Mr. Grattino's status as a retired life member is not analogous to that of an employee.
 {¶ 19} The record clearly shows that the Union was not acting through Grattino at the time of the accident. He was not an employee of the Union and received no compensation for attending the informational picket line. In fact, Grattino was not required, or even expected, to participate:
"Q. Did anyone talk to you specifically about going to the informational picket line?
No, just an announcement at the meeting it was.
* * *
Q. Did you have to go?
No.
Q. What would have happened if you didn't go?
Nothing.
* * *
Q. People might have been disappointed, but that would have been the extent of it?
Correct.
Q. Were you paid to be there?
No.
Q. Did you receive any benefits other than solidarity with the union by being there?
No."
 {¶ 20} Further, the informational picket line was attended by others not affiliated with the Union. We do not dispute that appellants have a viable interest in the Union's well-being. Such an interest, however, could never have been contemplated by Westfield. We feel such a finding would create undesired results.[6]
 {¶ 21} As shown above, William Grattino was neither an employee of the Union, nor acting on its behalf when he was struck. We refuse to extend coverage under an employer's insurance policy to those individuals beyond the employee relationship. Scott-Pontzer, supra. Grattino, as a retired life member of the Union, is not an insured under the Westfield policy. Our inquiry, therefore, is at an end. Id.
 {¶ 22} Appellants assignment of error is overruled.
Judgment is affirmed.
MICHAEL J. CORRIGAN, P.J. CONCURS
 ANNE L. KILBANE, J. CONCURS IN JUDGMENT ONLY
[1] Grattino described the difference between a picket line and an informational picket line. A picket line occurs when a party is participating in a strike. An informational picket line is used to draw attention to an issue; in this case, the fact that nonunion workers were being used at the Home Depot construction site.
[2] Grattino was a member of the Union for 44 years. At the time of the accident, Grattino's status was as a retired life member.
[3] The trial court relied on Gibson v. New Hampshire Ins. Co.,178 F. Supp.2d 921; De Uzhca v. Durham (Oct. 9, 2001), Montgomery County App. No. 00-5016; and Caylor v. Pacific Employers Ins. Co. (August 3, 2001), Miami County, Case No. 99-400, in granting Westfield's motion for summary judgment. The court found that Scott-Pontzer "is limited to employees seeking uninsured/ underinsured motorists coverage * * *." We respectfully decline to follow the trial court's authority for its granting of Westfield's motion for summary judgment. We do, however, agree with the trial court's holding.
[4] The court notes that this decision carries with it no precedential value. However, as appellants ask this court to adopt the reasoning contained in this decision, we will address it.
[5] "Some unincorporated associations by reason of the manner of their organization, the purposes to be accomplished and the relation of their functions * * * must be considered, as is true of corporations, as having by legal fiction an entity recognized by law separate and apart from their members." Headnote 8. Appellants and Westfield both cite this decision.
[6] For example, a corporation's shareholders also have viable interests in the stability and well-being of the business to which they are invested. Under appellants' logic, if a shareholder took part in any corporate event, he or she would be acting on the company's behalf, and thus would be entitled to recover from the company's insurance carrier.Scott-Pontzer, supra, simply does not support this position.